UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
Dawn Warren and Adam Salgado,                                       :
                Plaintiffs,                          :
                                      **COMPLAINT**
   -against-                                                       :

Robert Cox; Talk of the Sound; and                                  :
Words in Edgewise,
                                                             :
                Defendants.
------------------------------------------------------------------- X

      Plaintiffs Dawn Warren ("Ms. Warren") and Adam Salgado ("Mr. Salgado") (collectively, "Plaintiffs"), by and through their attorneys, Lewis & Lin LLC, for their Complaint against Defendants Robert Cox ("Defendant Cox" or "Cox"), Talk of the Sound, and Words in Edgewise (collectively, "Defendants"), allege as follows:

**STATEMENT OF THE CASE**

      1.    Plaintiffs Dawn Warren – Corporation Counsel of the City of New Rochelle – and Adam Salgado – the City's Commissioner of Development – bring this action to halt and redress an online smear campaign orchestrated by Defendant Robert Cox through his two self-run publications, Talk of the Sound and Words in Edgewise. Beginning with the first installment of "The New Rochelle Thimblerig" on October 28, 2024, and continuing through more than thirty articles published since then, including as recently as May 10, May 11, June 2, and June 22, 2025, Cox has falsely branded Plaintiffs as drug-abusing, corrupt public officials due to their refusal to surrender privileged, exempt, or nonexistent City Hall records to him.

      2.    Defendant Cox's writings falsely accuse Plaintiffs of, *inter alia*, on-duty drug use, including marijuana and cocaine; portray Ms. Warren as having a "sordid" past with a "history of

cocaine use" and other "drug issues;" and claims that Mr. Salgado was fired for substance abuse and has a history of engaging "sex workers." Cox even fabricated the existence of a video that Cox purported showed Ms. Warren ingesting cocaine. These are not rhetorical flourishes or opinions – they are concrete, defamatory falsehoods, published with actual malice as part of a year-long vendetta against Plaintiffs for refusing to produce privileged, exempt, or nonexistent records to Defendant under New York's Freedom of Information Law.

3. When Plaintiffs served a detailed cease-and-desist letter, Cox doubled down: he posted the letter itself, republished the lies verbatim, and published and e-mailed them to the very audience that includes Plaintiffs' colleagues and superiors. The defamation has already provoked media inquiries, public doubt about Plaintiffs' fitness for office, emotional trauma, and tangible losses – including legal fees, costs associated with mental health care, and reputational harm – well exceeding the jurisdictional minimum.

4. This suit therefore seeks (i) compensatory damages no less than $250,000.00 each, together with punitive and exemplary damages to deter similar misconduct; (ii) an injunction compelling removal of the offending content and barring further defamation; and (iii) such other relief as the Court deems just.

## THE PARTIES

5. Plaintiff Dawn Warren ("Ms. Warren") is a citizen of New York and domiciled in Westchester County in the State of New York. At all relevant times, Ms. Warren served and continues to serve as Corporation Counsel of the City of New Rochelle.

6. Plaintiff Adam Salgado ("Mr. Salgado") is a citizen of New York and domiciled in Westchester County in the State of New York. At all relevant times, Mr. Salgado served and continues to serve as the Commissioner of Development of the City of New Rochelle.

7. Defendant Robert Cox ("Defendant Cox" or "Cox") is, upon information and belief, a citizen of Ireland, who resides at Emmett House Apt 1, Clyde Road, Dublin 4, D04 PD65, Ireland.

8. Defendant Talk of the Sound ("Talk of the Sound" or "*TOTS*") is an online news-and-commentary publication located at **www.talkofthesound.com**. Defendant Cox is – and at all relevant times was – the sole owner, publisher, and content creator for Talk of the Sound, exercising complete editorial control over its content.

9. Defendant Words in Edgewise ("Words in Edgewise" or "*WIE*") is an online news-and-commentary publication located at **www.robertcox.ie**. Like Talk of the Sound, Words in Edgewise is owned, operated, and written exclusively by Cox, who exercises complete editorial control over its content.

10. Talk of the Sound and Words in Edgewise essentially function as a single integrated platform: articles cross-link to one another, share identical distribution channels, and together serve as Cox's primary vehicle for the defamatory statements at issue in this action.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction under 28 U.S.C. § 1332(a)(2) because (i) Plaintiffs are citizens of New York, (ii) Defendant Robert Cox is a citizen of Ireland, and (iii) the amount in controversy for each Plaintiff exceeds $75,000, exclusive of interest and costs.

12. The Court may exercise personal jurisdiction over all Defendants pursuant to CPLR § 302(a)(1)–(3) and the Due Process Clause. Cox deliberately directed the challenged publications at New York readers – principally those in New Rochelle – fully aware that the reputational harm would be felt where Plaintiffs live and work. This intentional, forum-focused conduct satisfies the "effects" test of *Calder v. Jones*, 465 U.S. 783, 789-90 (1984), as applied by the Second Circuit in

*Penguin Group (USA) Inc. v. American Buddha*, 640 F.3d 497, 501-02 (2d Cir. 2011).

13. Defendant Cox also "transacts business" and "commits tortious acts" in New York by continuously operating Talk of the Sound and Words in Edgewise, which charge readers via a paywall, solicit local New York advertisers and/or target a predominantly New York audience. These sustained, revenue-generating contacts constitute purposeful availment of the privileges of conducting activities in this State.

14. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(1)–(2) because (a) at least one Defendant is subject to personal jurisdiction in this District, and (b) a substantial part of the events or omissions giving rise to the claims – including publication, republication, and the resulting injury – occurred in Westchester County, which lies within this District.

15. Even if any Defendant were deemed not to reside in the United States for venue purposes, venue is still proper here under § 1391(b)(3) because Defendants are subject to this Court's personal jurisdiction and thus may be sued in any judicial district.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS

### Defendants and Their Platform

16. Talk of the Sound and Words in Edgewise are companion websites wholly owned, written, and controlled by Defendant Cox.

17. For several years, up until about 2023, Defendant Cox resided in the City of New Rochelle. Cox relocated to Dublin, Ireland, in July 2023 but continues to publish *TOTS* and *WIE* daily from abroad, targeting the same New York audience.

18. The Talk of the Sound website, launched in 2008, hosts original posts and articles written by Defendant Cox himself, and also contains links to posts of other online media outlets

about local happenings. The Talk of the Sound website includes links to Defendant Cox's posts on Words in Edgewise and vice versa.

19. Words in Edgewise, launched in 2020, hosts only original content authored by Defendant Cox himself.

20. Defendant Cox directs Talk of the Sound and Words in Edgewise to an audience based overwhelmingly in New York, and in the New Rochelle area. Virtually all readership is located in New York.

21. All, or nearly all, of the advertisers on Talk of the Sound and Words in Edgewise are for New York based businesses.

22. The articles posted are nearly exclusively about New Rochelle.

**Plaintiffs' Professional Standing**

23. Ms. Warren is Corporation Counsel for the City of New Rochelle, charged with advising the City Manager, and all city officers, departments, bureaus, boards and commissions thereof in matters relating to their official duties, and in prosecuting and defending actions, suits and proceedings for and on behalf of the city.

24. Mr. Salgado is the City's Commissioner of Development, overseeing planning, zoning, and economic-development initiatives.

25. Both Plaintiffs are public servants.

**The FOIL Disputes That Sparked Cox's Vendetta**

26. Beginning in early 2024 Cox began demanding that City Hall – and, by extension, Warren and Salgado – produce exempt and/or privileged attorney-client communications and nonexistent personnel files under the New York Freedom of Information Law (or "FOIL").

27. Plaintiffs lawfully refused certain requests, citing statutory exemptions, and

repeatedly informed Cox of his right to commence an Article 78 petition if he believed he was entitled to records that were not being produced.

28. Defendant Cox never filed any such petition to compel the City to disclose the requested records that were not produced. Instead, Cox turned to his own media platform, using them to publish a series of disparaging and defamatory statements about Plaintiffs.

29. Upon information and belief, Cox had previously been granted preferential access to City Hall records by Kathleen Gill, who at the time served as Corporation Counsel and City Manager. This access appeared to be aligned with Gill's professional and political interests, including enhancing her public profile and influencing perceptions of certain individuals within City government.

30. Rather than require Cox to follow the proper FOIL procedures, upon information and belief, Gill allegedly gave Cox direct access to internal City records outside of the usual channels.

31. When Ms. Warren was appointed to replace Gill, that privileged pipeline was shut off – prompting Cox's retaliatory smear campaign rooted in frustration over losing the special treatment he had come to expect.

**Escalation into a Serial Smear Campaign**

32. Cox's anger at being denied privileged, exempt or nonexistent City Hall records under FOIL did not subside; he instead weaponized that records dispute as the launchpad for an orchestrated smear campaign against Plaintiffs.

33. Cox's campaign unfolded in several main waves.

34. **"The New Rochelle Thimblerig" series** (October 28, 2024 – January 2025). In over twenty-eight installments on *WIE*, hyperlinked on *TOTS*, Cox falsely accused Plaintiffs of

on-duty drug use, termination for cause, arrest, and a "sordid" history of substance abuse.

35. **"Sex, Drugs & Lies"** (May 10, 2025), its companion **"Recommended Reading"** newsletter (May 11, 2025), and **"How I Prepared to Drop the Sex, Drugs, and Lies Story on Dawn Warren and Adam Salgado"** (May 14, 2025). In these articles, Cox repackaged the same previous defamatory statements, added an accusation that a fictitious video existed in which Ms. Warren supposedly snorts cocaine, and labeled Mr. Salgado "Loverboy" with "a history of hiring sex workers."

36. **"My Response to Lawfare by Dawn Warren, Adam Salgado, and the City of New Rochelle"** (January 6, 2025). In this article, Cox embedded Plaintiffs' December 2, 2024 cease-and-desist letter (detailed further herein), derided it as "lawfare," and republished the false accusations of on-duty drug use, arrest, and professional misconduct – thereby amplifying and renewing the defamatory claims he had already circulated.

37. **"Six-Month Anniversary: New Rochelle Legal Threats Backfire"** (June 2, 2025). Boasting that Plaintiffs' "legal intimidation" had failed, Cox repeated the drug-use story, claimed Warren's "history of cocaine use" was recorded on Salgado's phone, and stated that Salgado was fired for "chronic tardiness and substance abuse," hired sex workers, and later sued his employer using a nude photograph as evidence.

38. Throughout these publications (and others), in addition to the false and defamatory statements alleged herein, Cox also mocked Warren as "Dum Dum," called her "a disgrace to the legal profession," and an "incompetent clown" that "needs to go." Cox similarly berated Mr. Salgado, calling him "lover boy" and branding him a thief who pocketed taxpayer money. These statements were made with the clear and malicious intent to undermine Plaintiffs' professional capabilities and credibility in the workplace.

**Plaintiffs' Attempts to Halt the Defamation**

39. On December 2, 2024, Plaintiffs served a detailed cease-and-desist letter demanding retraction of the false statements.

40. Cox not only refused but brazenly posted the letter itself on both websites and immediately republished the false statements, ensuring they remained "pinned" at the top of each site and recirculated through his e-mail list.

**Defamatory Statements and their Falsity**

41. Plaintiffs challenge 23 principal Statements made by Defendants – each presented as fact, each demonstrably false (each a "Statement (#)" and together as the "Statements"):

(1) Plaintiffs "got high together, at City Hall, during the workday." (*The New Rochelle Thimblerig, Part I* – Oct 28, 2024, posted on Words in Edgewise and cross-linked on Talk of the Sound).

(2) Mr. Salgado "was fired by the NYC Department of Transportation" and "arrested" thereafter, with the record "expunged." (*The New Rochelle Thimblerig, Part I* – Oct 28, 2024, *WIE/TOTS*).

(3) "As evidence in his complaint, Salgado produced a nude photo" of his former supervisor. (*The New Rochelle Thimblerig, Part I* – Oct 28, 2024, *WIE/TOTS*).

(4) Plaintiffs have "sordid pasts that include drug issues." (*The New Rochelle Thimblerig, Part I* – Oct 28, 2024, *WIE/TOTS*).

(5) "Adam and Dawn *do* have a sordid past with drug issues." (*My Response to Lawfare by Dawn Warren, Adam Salgado, and the City of New Rochelle* – January 6, 2025, *WIE/TOTS*) (emphasis in original).

(6) "They did get high together at City Hall." (*My Response to Lawfare by Dawn Warren, Adam Salgado, and the City of New Rochelle* – January 6, 2025, *WIE/TOTS*).

(7) "[M]y sources tell me Warren and Salgado were observed from a window on more than [sic] occasion standing *outside* the building but *on* City Hall property [getting high]." (*My Response to Lawfare by Dawn Warren, Adam Salgado, and the City of New Rochelle* – January 6, 2025, *WIE/TOTS*) (emphasis in original).

(8) Mr. Salgado "was fired by the NYC Department of Transportation" and "arrested" thereafter, with the record "expunged." (*My Response to Lawfare by Dawn Warren, Adam Salgado, and the City of New Rochelle* – January 6, 2025, *WIE/TOTS*).

(9) "As evidence in his complaint, Salgado produced a nude photo" of his former supervisor. (*My Response to Lawfare by Dawn Warren, Adam Salgado, and the City of New Rochelle* – January 6, 2025, *WIE/TOTS*).

(10) "I will never backdown from my entirely accurate reporting." (*My Response to Lawfare by Dawn Warren, Adam Salgado, and the City of New Rochelle* – January 6, 2025, *WIE/TOTS*).

(11) "The DA has multiple witnesses who told them about all manner of issues [that Cox wrote about] involving Dawn Warren and Adam Salgado." (*My Response to Lawfare by Dawn Warren, Adam Salgado, and the City of New Rochelle* – January 6, 2025, *WIE/TOTS*).

(12) "They both have sordid pasts that include drug issues." (*Sex, Drugs & Lies* – May 10, 2025, *WIE/TOTS*, and again in the *Recommended Reading* newsletter – May 11, 2025).

(13) "[T]he DA's Office is aware of a video that was on Salgado's phone, allegedly shared by Salgado at City Hall, which depicts Warren ingesting cocaine." (*Sex, Drugs & Lies* – May 10, 2025, *WIE/TOTS*, and again in the *Recommended Reading* newsletter – May 11, 2025).

(14) Plaintiffs "got high together, at City Hall, during the workday." (*Sex, Drugs & Lies* – May 10 2025, *WIE/TOTS*, and again in the *Recommended Reading* newsletter – May 11 2025);

(15) "I could have mentioned that Salgado has a history of hiring sex workers." (*Sex, Drugs & Lies* – May 10, 2025, *WIE/TOTS*, and again in the *Recommended Reading* newsletter – May 11, 2025).

(16) "I am reliably informed that over the course of these interviews, the DA received information about drug use by Warren and Development Commissioner Salgado, involving marijuana and cocaine." (*Sex, Drugs & Lies* – May 10, 2025, *WIE/TOTS*, and again in the *Recommended Reading* newsletter – May 11, 2025).

(17) "For years Salgado carried around on his phone a nude photo of his boss which he then weaponized by producing in a retaliatory sexual harassment claim." (*Sex, Drugs & Lies* – May 10, 2025, *WIE/TOTS*, and again in the *Recommended Reading* newsletter – May 11, 2025).

(18) Unnamed "sources" confirm Plaintiffs were "seen getting high on City Hall property" (*Six-Month Anniversary: New Rochelle Legal Threats Backfire* – June 2, 2025, *WIE/TOTS*).

(19) Ms. Warren's "history of cocaine use" was recorded on Mr. Salgado's phone (*Six-Month Anniversary: New Rochelle Legal Threats Backfire* – June 2, 2025, *WIE/TOTS*).

(20) "I've since expanded my reporting, standing firm on the accuracy of my claims" and "Warren and Salgado were seen getting high on City Hall property, viewed from a window, and confronted about it." (*Six-Month Anniversary: New Rochelle Legal Threats Backfire* – June 2, 2025, *WIE/TOTS*).

(21) Mr. Salgado's "documented history" includes "hiring sex workers." (*Six-Month Anniversary: New Rochelle Legal Threats Backfire* – June 2, 2025, *WIE/TOTS*).

(22) "After being fired for chronic tardiness and substance abuse, [Mr. Salgado] sued his former boss for sexual harassment, using a surreptitiously taken nude photo as evidence." (*Six-Month Anniversary: New Rochelle Legal Threats Backfire* – June 2, 2025, *WIE/TOTS*).

(23) Ms. Warren and Mr. Salgado "dreamed up an absurd plan to claim I defamed them (by accurately reporting on their drug use)." (*Recommended Reading, June 22, 2025* – *WIE/TOTS*)

42. These 23 Statements are false.

43. It is false that Plaintiffs "got high together, at City Hall, during the workday." No such conduct ever occurred. There is no known video footage, witness statement, or other evidence – direct or circumstantial – supporting this claim.

44. It is false that Mr. Salgado "produced a nude photo" of his supervisor as part of a legal proceeding. Mr. Salgado never submitted, possessed, or relied on any nude photo in connection with any legal or administrative proceeding, including the referenced sexual harassment complaint. The allegation is not only baseless but recklessly sensational, serving no purpose beyond humiliating Mr. Salgado and falsely portraying him as unethical and vindictive.

45. It is false that Mr. Salgado was "fired by the NYC Department of Transportation" or "arrested" thereafter with the record "expunged." Mr. Salgado resigned voluntarily in good

standing and was not arrested thereafter with the record expunged.

46. It is false that Ms. Warren has a "sordid past[] that include[s] drug issues." Ms. Warren has never had any "drug issues," including drug-related arrests and/or discipline, substance abuse, or anything of the like. Ms. Warren's bar registration and employment records disclose no such drug-abuse history or issues.

47. Cox's May 10 and May 11, 2025, republications of the false statements made in *The New Rochelle Thimblerig, Part I* do not alter their falsity; the repetition merely magnifies the original lie, which remains unsupported and unverified.

48. It is false that a District Attorney "video" shows Ms. Warren ingesting cocaine.

49. It is false that Mr. Salgado "has a history of hiring sex workers."

50. It is false that unnamed "sources" confirmed Plaintiffs were seen using cocaine or marijuana on City Hall property.

51. It is false that the "DA received information about drug use by Warren and [Salgado], including marijuana and cocaine."

52. It is false that Ms. Warren has a "history of cocaine use."

53. It is false that "Warren and Salgado were seen getting high on City Hall property, viewed from a window, and confronted about it." No such incident occurred, no confrontation ever took place, and no such accusation has been made by any credible authority. Defendant Cox offers no names, dates, or corroborating details, and the claim was published without verification or good-faith investigation.

54. It is false that Ms. Warren's supposed "history of cocaine use" was recorded on Mr. Salgado's phone.

55. It is false that Cox "accurately report[ed]" on any drug use by Plaintiffs, because

none occurred. Plaintiffs have never used marijuana or cocaine at City Hall or elsewhere during their public service, and no credible source, document, or agency has ever suggested otherwise. The statement misrepresents the truth and implies independent corroboration where none exists.

56. Defendants published the Statements without privilege or authorization.

57. Each Statement expressly identified or unmistakably referred to Plaintiffs, who were named, pictured, and described by their City Hall titles.

58. Defendants published the Statements to third parties worldwide, including readers located in this District, via Defendants' publicly accessible websites.

**Defendants' Actual Malice**

59. Defendants acted with actual malice – *i.e.,* they knew the statements were false or recklessly disregarded the truth.

60. For more than a year, and continuing to the present, Defendant Cox has waged a personal campaign to punish Plaintiffs for resisting his demands for privileged, exempt or non-existent City Hall records.

61. In dozens of articles – including *The New Rochelle Thimblerig* Parts I-XXVI, "Sex, Drugs and Lies" (May 10, 2025), and "Recommended Reading" (May 11, 2025) – besides the false statements of fact as detailed herein, Cox also portrays Ms. Warren as "Dum Dum," "a disgrace to the legal profession," and an "incompetent clown" that "needs to go." Cox similarly berated Mr. Salgado, calling him "lover boy" and branding him a thief who pocketed taxpayer money.

62. When Cox's FOIL requests and threatening follow-ups failed to coerce immediate disclosure, Defendants pivoted to public shaming – publishing serial blog posts and social-media blasts including on Facebook that recast a routine records dispute as evidence of professional

corruption and personal wrongdoing.

63. By weaponizing their media platform to apply pressure, Defendants sought to punish Plaintiffs for standing on their legal rights and to force capitulation through reputational harm.

64. Upon information and belief, Defendants did not have any evidence of the wrongdoing contained in the Statements.

65. Upon information and belief, Defendants did not take any reasonable steps to verify the accuracy of the wrongdoing contained in Statements.

66. Upon information and belief, Defendant Cox possessed – or could have obtained with a routine records search – information disproving many of the challenged Statements.

67. Despite not having any of the evidence that Cox claimed to have, and despite failing to take any steps to verify the information contained in the articles, Cox published and republished the accusations verbatim, even after receiving Plaintiffs' cease-and-desist letter on December 2, 2024, and express denial in email on January 6, 2025.

68. Defendants' May 10, 2025, article asserts that a "video" exists and was produced to the DA showing Ms. Warren ingesting cocaine, but the article cites no source and admits not having viewed any such video. Publishing serious criminal accusations while admitting the evidence is unverified demonstrates a *reckless disregard for truth*.

69. After being put on notice of falsity by Plaintiffs' counsel and the City Council (Res. 2024-204), Cox not only refused to correct or retract but republished the defamatory statements – embedding the cease-and-desist letter, reposting links on Talk of the Sound, and featuring the allegations in subsequent "*Recommended Reading*" newsletters – thereby amplifying the harm and confirming his spiteful intent.

70. Indeed, Cox not only refused to retract the Statements; he has repeatedly republished and amplified them.

71. On June 2, 2025, in an article entitled *"Six-Month Anniversary: New Rochelle Legal Threats Backfire,"* Cox doubled down on the same discredited claims – again accusing Ms. Warren of "a history of cocaine use" allegedly captured on video, repeating that Plaintiffs were "seen getting high on City Hall property," and asserting that Mr. Salgado had been "fired for substance abuse" and "hired sex workers." He went further, claiming he was "accurately reporting" on their alleged drug use and that they had been "confronted" after being observed using drugs at City Hall. This republication came months after Cox received denials, public refutations, and a cease-and-desist letter – confirming that he acted with actual malice and a deliberate intent to magnify the reputational harm to Plaintiffs.

72. Cox's June 22, 2025 "Recommended Reading" article leaves no doubt that his campaign of defamation is deliberate and ongoing. Doubling down yet again, he declared that his writings about Plaintiffs' alleged drug use were again "accurate reporting." This persistent republication of proven falsehoods underscores Cox's actual malice and intent to inflict reputational damage.

73. Cox distributed the articles through the same websites and Facebook accounts, ensuring renewed circulation among the very audience that includes Plaintiffs' colleagues, employers, and professional contacts – further confirming his spiteful intent and reckless disregard for the truth.

74. Cox also filed two formal ethics complaints – an original and an amended version – against Ms. Warren, suggesting that she was under criminal investigation and had committed criminal acts. Both complaints were reviewed and dismissed by the New Rochelle Ethics Board,

underscoring that Cox's allegations were unsubstantiated. Despite this, Cox continued to promote those same claims on his platform, demonstrating his reckless disregard for the truth.

**Defamation Per Se: Criminal, Professional, and Sexual Misconduct Accusations**

75. The Statements charge the Plaintiffs with serious criminal conduct – most notably on-duty marijuana and cocaine use at City Hall. By asserting that the City's Corporation Counsel and Commissioner of Development committed crimes while performing their official duties, these statements place Plaintiffs squarely in the category of individuals accused of criminal wrongdoing. Because the alleged conduct is criminal in nature and punishable by law, the statements are inherently defamatory without the need for Plaintiffs to prove special damages.

76. The Statements also attack the very competence and integrity that are central to Plaintiffs' professions. Accusations of drug addiction, on-duty drug use on City Hall property, and sexual impropriety inevitably erode confidence in Plaintiffs' professional abilities; the law therefore presumes harm to reputation and standing in the community.

77. Statements 3, 9, 15, 17 and 21 claim that Salgado maintains "a history of hiring sex workers" and once leveraged a "nude photograph" of his supervisor in litigation. Allegations of solicitation and related sexual impropriety carry a uniquely stigmatizing force: they invite moral condemnation, suggest criminal or at least illicit behavior, and threaten to destroy personal and professional relationships. Such charges are so inherently damaging that the law treats them as defamatory per se and presumes compensatory and even punitive damages.

**Other Damages and Harm**

78. Since the Statements were published, the public have sought comment, City Council members have questioned Plaintiffs' fitness for office, and Plaintiffs have spent substantial work and time rebutting rumors to colleagues and vendors, materially diminishing their

professional standing and future opportunities.

79. Plaintiffs have also incurred reputational harm, as well as concrete monetary harm, including legal fees and medical expenses – all of which already exceed $75,000 for each Plaintiff and will continue to grow.

80. Defendants' malicious campaign has caused severe personal humiliation, stress-related medical symptoms, and sleep disruption, and therefore also warrants punitive damages to deter similar misconduct and injunctive relief ordering removal of the defamatory content.

**FIRST CLAIM FOR RELIEF**
**Defamation *Per Se***
**(Against All Defendants)**
**(Brought by Ms. Warren)**

81. Ms. Warren repeats, reallege, and incorporate the preceding paragraphs herein as if fully stated under this claim.

82. Ms. Warren brings fifteen separate counts for defamation *per se* based on each of Statements 1, 4, 5, 6, 7, 10, 11, 12, 13, 14, 16, 18, 19, 20, and 23.

83. These Statements falsely accuse Ms. Warren of serious criminal conduct – including cocaine and marijuana use while on duty – as well as professional misconduct that strikes at the heart of her integrity as a public official and licensed attorney.

84. These Statements are demonstrably false, unsupported by evidence, and were published with actual malice.

**SECOND CLAIM FOR RELIEF**
**Defamation *Per Se***
**(Against All Defendants)**
**(Brought by Mr. Salgado)**

85. Mr. Salgado repeats, reallege, and incorporate the preceding paragraphs herein as if fully stated under this claim.

86. Mr. Salgado brings twenty separate counts for defamation *per se* based on each of Statements 1, 2, 3, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, and 23.

87. These Statements falsely accuse Mr. Salgado of criminal drug use, termination for cause, solicitation of sex workers, and other forms of sexual and professional misconduct – all of which are categorically untrue and severely damaging to his reputation as a public servant.

88. These Statements are demonstrably false, unsupported by evidence, and were published with actual malice.

## **PRAYER FOR RELIEF**

**WHEREFORE**, by reason of the acts and circumstances alleged herein, Plaintiffs seek relief from this Court as follows:

a. Judgment on the claims set forth above;

b. An award of compensatory damages according to proof at trial, but in an amount no less than $250,000.00, as well as punitive and exemplary damages where authorized;

c. An order enjoining Defendants and those in active concert with Defendants from publishing any further defamatory statements concerning Plaintiffs;

d. An order directing Defendants to delete and remove the Statements, and any other publications or republications of the defamatory Statements;

e. An order directing Defendants to undertake such remedial efforts as the Court deems necessary to restore Plaintiffs' reputations;

f. Prejudgment and post-judgment interest at the applicable rates;

g. An award for reasonable attorneys' fees, costs and disbursements, where applicable; and

h. Such other and further relief the Court deems proper and just.

**DEMAND FOR TRIAL BY JURY**

Please take notice that Plaintiffs hereby demand trial by jury for all issues so triable.

Dated: Brooklyn, New York
August 4, 2025

Respectfully submitted,

**LEWIS & LIN, LLC**

*Michael Cilento*
David D. Lin, Esq.
Michael D. Cilento, Esq.
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
David@iLawco.com
Michael@iLawco.com
*Attorneys for Plaintiffs*